UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CR-60273-COHN

UNITED STATES OF AMERICA,  :
                                                             :
    Plaintiff,                                      :
                                                             :
           v.                                         :
                                                             :
NICOLE HOLGUIN,                             :
                                                             :
    Defendant.                                  :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

**NICOLE HOLGUIN'S SENTENCING MEMORANDUM**



1

## **INTRODUCTION**

Nicole Holguin is not the stereotypical drug trafficker. Rather, she is the stereotypical drug addict. Since she was 15 years old, Ms. Holguin's primary drug of abuse has been methamphetamine. (PSI at ¶ 56 and 64). Ms. Holguin is also the stereotypical victim of abuse. She was physically, sexually, and mentally abused by nearly every primary male figure in her life from her pre-teen years to the age of 31. (PSI at ¶ 56). Indeed, with the exception of her most-recent boyfriend and co-defendant, Alfredo Carranza, (whom she describes as the only man that never beat her), Ms. Holguin has been physically abused by every man with whom she has ever had a relationship. (PSI at ¶ 56 and 61).

With respect to her commission of the instant drug offense however, Ms. Holguin knew what she was doing. She knowingly and willfully participated in a conspiracy with Mr. Carranza to ship several packages of methamphetamine, via Federal Express, from their home in Las Vegas to South Florida. (PSI at ¶ 15). The Presentence Investigation Report accurately reflects her offense conduct in this regard. (PSI at ¶¶ 7 – 14). The Presentence Investigation Report also correctly indicates that Ms. Holguin should not receive any managerial or organizational enhancement and that she is to be held responsible for 765.7 grams of actual methamphetamine. (PSI at ¶ 15). Accordingly, there is little Ms. Holguin can add in terms of how this Court should view the factual nature and circumstances of her offense. Ms. Holguin's conduct in this regard results in an adjusted offense Guideline level of 36 before factoring in her acceptance of responsibility or any downward departure for her substantial assistance.

Thus, in assessing what sentence is reasonable under the factors set forth in 18 U.S.C.

2

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 E. FLAGLER ST., STE. 1241, MIAMI, FL 33131, TELEPHONE: (305) 373-6773; FACSIMILE: (305) 373-3832

§ 3553(a), and given the totality of circumstances presented this case, Ms. Holguin respectfully requests that this Court impose a reasonable sentence lower than the advisory guideline range set forth in the Presentence Investigation Report.  In so mitigating her sentence (whether it be by variance or departure) Ms. Holguin asks that this Court not only consider her cooperation with the United States, but also the factors that underly her involvement in the charged drug offense and her past criminal conduct, as well as the lack of any empirical support justifying the existing methamphetamine guidelines that dictate her applicable base offense level.  *See, e.g. Spears v. United States*, 555 U.S. 261, 263-67 (2009) (*per curium*); *United States v. Kimbrough*, 552 U.S. 85, 109-10 (2007).

## FACTUAL AND LEGAL BASES FOR SENTENCE MITIGATION

**Ms. Holguin's Cooperation:**

Following her arrest, Ms. Holguin confessed, expressed her remorse, accepted her responsibility for her conduct, and did everything she could to make amends through her cooperation with the United States.  Indeed, Ms. Holguin began cooperating with the United States even before the entry of her guilty plea, and provided extensive information regarding the commission of several differing offenses and offenders.  Immediately following her guilty plea, Ms. Holguin was transported to Mississippi where she was listed as a witness by the United States in the prosecution of a co-conspirator.  Ultimately, her cooperation, willingness to testify, and disclosure as a witness led this co-conspirator to plead guilty.  In recognition of her substantial assistance in this regard, the Government will be asking this court to sentence Ms. Holguin lower than her advisory guideline sentence pursuant to U.S.S.G. § 5K1.1.

3

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 E. FLAGLER ST., STE. 1241, MIAMI, FL 33131, TELEPHONE: (305) 373-6773; FACSIMILE: (305) 373-3832

**Ms. Holguin's Personal Background:**

Ms. Holguin is 32 years old.  She has two children from two prior failed marriages: Trinity Schusterbauer, who is 13 years old, and Mason Holguin, who is 9 years old.  (PSI at ¶¶ 51 and 52).  Trinity's father is presently incarcerated in Arkansas for armed bank robbery and Mason's father is a recovering drug addict residing in Las Vegas. (PSI at ¶¶ 51 and 52).  As for Ms. Holguin, she does not know her father.  (PSI at ¶ 46).  Indeed, Ms. Holguin does not even know her biological father's name as her mother has only told her she was a product of a sexual assault.  *Id.*  According to Ms. Holguin's mother, she has no father.  *Id.*  Ms. Holguin was raised by her mother and her mother's various boyfriends in Las Vegas, Nevada.  *Id.*

Ms. Holguin's childhood was extraordinarily traumatic and troubled.  (PSI at ¶ 47).  At the age of five months, she was physically abused and suffered a skull fracture.  *Id.*  Child protective services were called to her home several times due to conflicts at the residence.  *Id.*  From the ages of 2 to 7, her mother, Shawn McHale, maintained a live-in relationship with Larry Gonzalez who played the role of her father.  According to Ms. McHale, however, when the relationship with Mr. Gonzalez ended and he moved out, he desired to continue his relationship with Ms. Holguin, who was 7 years old at the time.  According to Ms. Holguin's mother, this arrangement only lasted for a few months until she ended it after learning Mr. Gonzalez was sleeping in the same bed as Ms. Holguin and asking her to lie about it.

A few years later, Ms. Holguin's mother then began residing with Herman Huerta. (PSI at ¶ 48).  She described Mr. Huerta has having a very bad substance abuse problem and a very bad temper.  *Id.*  She also described Mr. Huerta as having a "weird relationship" with Ms. Holguin.  At the time, Ms. Holguin was only 14 or 15 years old.  *Id.*  According to Ms. Holguin, this was when Mr. Huerta began sexually abusing her.  Ms. McHale, however, denies this.

4

She does however, recall Mr. Huerta placing a gun in his mouth and threatened to kill himself in front of Ms. Holguin for some unknown reason.  It was around this time that Ms. Holguin's mother became pregnant with Mr. Huerta's child.

Mr. Huerta continued having a "more friendly than parental-child relationship." (PSI at ¶ 48). Indeed, when he learned of Ms. Holguin's drug use, he did not object. *Id.*  At the age of 15, Ms. Holguin was gang raped, but ultimately refused to cooperate with authorities because she was scared the aggressors would retaliate further. (PSI at ¶ 49).  Although the matter was reported to law enforcement, Ms. Holguin's mother did not believe her and was totally unsupportive. *Id.*  Ms. Holguin's drug abuse became worse, she frequently ran away from home, and in 1997, Ms. Holguin was placed in an at-risk youth boot camp.  (PSI at ¶ 50). Upon her release from the boot camp, Ms. Holguin returned to her life of alcohol and drug abuse. *Id.*

At the age of 18, Ms. Holguin married Marc Schusterbauer, age 38, in Clark County, Nevada.  (PSI at ¶ 51).  Mr. Schusterbauer, a tattoo artist and drug user who was several years her senior, was both physically and mentally abusive to her. *Id.*  Ms. Holguin did have one child with Mr. Schusterbauer, but after less than 3 years of marriage, the couple divorced in 2002. *Id.*  Ms. Holguin's methamphetamine abuse continued (PSI at ¶ 42) until her arrest in June of 2003 after being stopped for driving erratically in a vehicle she took without the owner's consent. (PSI at ¶ 31).  Methamphetamine residue and paraphernalia were found in her purse, she was taken into custody, pleaded guilty, and sentenced to six months incarceration.  (PSI at ¶ 31).

In March of 2004, Ms. Holguin married Joseph Holguin.  (PSI at ¶ 52).  Although Ms. Holguin and her new husband did have one child together, because of their mutual substance

5

abuse, the relationship was unstable and they soon divorced.  *Id.*  Ms. Holguin's drug abuse continued and she was arrested several times thereafter until December of 2011 for various offenses that, in some sense, were connected to her drug addiction.  (PSI at ¶¶ 32, 33, 38, 39, and 40).

**The unreasonableness of methamphetamine guidelines:**

From the inception of the sentencing Guidelines to the present, there has been nearly a four-fold increase in the applicable guideline range for methamphetamine offenses.  *United States v. Hayes*, Case No. 12-Cr-4040-MWB (N.D.Iowa, June 7, 2013, at p.24) (attached hereto as Exhibit A).  This increase has been the result of political directive rather than any "precise analysis" or "empirical research."  *Id.* at p.31.  Indeed, on November 1, 1987, when the United States Sentencing Guidelines first took effect, "the Commission made 1 gram of methamphetamine equal to 2 grams of cocaine."  *Id.*  At present, the 2012 sentencing Guidelines make 1 gram of actual methamphetamine equal to 100 grams of cocaine.  U.S.S.G.§ 2D1.1.

At present, no other drug is punished more severely in federal court based on purity than methamphetamine.  *Hayes* at p.28.  There is absolutely "no support in the legislative history to explain the formula underlying greater methamphetamine purity to greater months of imprisonment."  *Id.* at 29.  Moreover, "a review of the history of the methamphetamine Guidelines [themselves] illustrates how the Guidelines were crafted by Congressional directive and not precise analysis and empirical research."  *Id.* at 31.

6

## A SENTENCE LOWER THAN THE ADVISORY GUIDELINE SENTENCE
## IS BOTH REASONABLE AND APPROPRIATE IN THE INSTANT CASE

Certainly, this Court well knows the sentencing mandate and an officious recitation of the entire body of law relating to *United States v. Booker*, 543 U.S. 220 (2005) and the factors set forth at 18 U.S.C. § 3553(a) factors is unnecessary. Instead, a focus on the foregoing mitigating factors and their application to relevant caselaw is most appropriate. All of the foregoing factors – none of which were taken into consideration when U.S. Probation calculated the advisory sentencing guidelines – weigh in favor of a sentence lower than the advisory guideline sentence of 188 months.

Less than a week ago, the United States Supreme Court reaffirmed what has become the hallmark of current federal sentencing practice: reasoned judicial discretion based on the individual circumstances of each case. *See, e.g. Peugh v. United States*, 569 U.S. ___ (June 10, 2013) (slip op.). Thus, while "a district court 'should begin all sentencing proceedings by correctly calculating the applicable Guidelines range' . . . [t]he district court 'may not presume that the Guidelines range is reasonable.'" *Id.* at 5 (*quoting Gall v. United States*, 552 U.S. 38 at 49-50) (2007). Accordingly, the district court '"may in appropriate cases impose a non-Guidelines sentence based on disagreement with the [Sentencing] Commission's views." *Id.* at 5 (*quoting Pepper v. United States*, 562 U.S. ___, (2011)(slip op., at 23) (*citing Kimbrough v. United States*, 552 U.S. 85, 109-110 (2007)).

District courts must nevertheless explain the basis for a particular sentence and "a major departure should be supported by a more significant justification than a minor one. *Gall*, 552 U.S., at 50. A "lack of empirical evidence [supporting a particular Guideline is] one factor

7

that a district court could consider in excercising its post-*Booker* right to depart from the guidelines." *United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010).  Of course, "a district court's decision to vary from the advisory Guidelines may attract greatest respect when 'it is based on the particular facts of the case.  *Peugh v. United States*, 569 U.S. ___, June 10, 2013)(slip op., at 6)(*quoting Kimbrough*, 552 U.S., at 109).  Accordingly, Ms. Holguin may now argue that a different sentence is appropriate regardless of the recommended guideline.  *Rita v. United States*, 127 S.Ct. 2456, 2465, 2468 (2007).  *Gall v. United States*, 128 S.Ct. 586, 594-95 (2007);  *Kimbrough v. United States*, 128 S.Ct. 558, 566-69, 574-75 (2007).  This is for several reasons.

First, while the Guidelines focus almost exclusively on harm caused by the offense of conviction, they give virtually no weight to the "history and characteristics of the defendant," which Congress instructs the sentencing court to consider equally with "the nature and circumstances of the offense." 18 U.S.C. §3553(a)(1). Indeed, no section of the Guidelines used to calculate offense level addresses these characteristics, and the sentence computation as a whole does not take into account the full scope of the offender's "history and characteristics." *See Rita v. United States*, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics."). Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines. With that in mind, we urge the Court to employ fair and due consideration to the following characteristics that weigh in favor of a mitigated sentence in this case:

8

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 E. FLAGLER ST., STE. 1241, MIAMI, FL 33131, TELEPHONE: (305) 373-6773; FACSIMILE: (305) 373-3832

- Ms. Holguin has been the victim of physical, sexual, and psychological abuse for her entire life from her pre-teen years to the present.

- Ms. Holguin's repeated physical, sexual, and mental abuse led her into a life dominated by her addiction to, and abuse of, methamphetamine

- Both Ms. Holguin's victimization and methamphetamine abuse contributed to her repeated arrests culminating in her arrest on the instant case.

Additionally, the Supreme Court has explained that evidence of post-offense rehabilitation is a relevant consideration under the § 3553 factors. *Pepper v. United States*, 131 S.Ct. 1229 (2011) (explaining that a district court may consider a defendant's attempts at rehabilitation even after sentencing and that "no limitation" be placed on the types of information a judge should consider about the "background, character and conduct of the defendant"). Ms. Holguin's efforts to assist the government demonstrates her sincere efforts at rehabilitation. Accordingly, and in the event the Government fails to file a motion for downward departure pursuant to Section 5K1.1 of the Guidelines, this Court may properly consider her conduct in this regard for purposes of a sentencing variance.

Finally, the Supreme Court has repeatedly endorsed the notion that district court judges may impose sentences varying from the Guideline range based on a policy disagreement with the Guidelines. *See, e.g., Spears v. United States*, 555 U.S. 261, 263-67 (2009) (*per curiam*); *United States v. Kimbrough*, 552 U.S. 85, 109-10 (2007). This is precisely what Ms. Holguin urges this Court to do with respect to the Guidelines range for methamphetamine offenses. Ms. Holguin is responsible for 765.7 grams of actual methamphetamine resulting in a base offense level 36 pursuant to the Guidelines. This is the same base offense level that would be applicable if Ms. Holguin were instead being held responsible for 29.9 kilograms of Heroin;

9

149.9 kilograms of cocaine; 8.39 kilograms of cocaine base; 29.9 kilograms of PCP; 5,999 kilograms of Hashish; 29,999 kilograms of Marijuana; or 29,999,999 doses of Ketamine.  This result is neither justified by empirical evidence, nor substantively reasonable.

Last week, in an extraordinarily well-written and reasoned opinion, United States District Court Judge Mark W. Bennett of the Northern District of Iowa, determined that a 75 month sentence of incarceration was appropriate under circumstances quite similar to the circumstances of the instant case.  Judge Bennett's powerful and thoughtful opinion in *United States v. Willie Hayes*, Case No 12-Cr-4040-MWB (N.D.Iowa June 7, 2013) holds that the methamphetamine Guidelines are inherently flawed and, as a result, justify a substantial downward variance.  First, Judge Bennett found the methamphetamine Guidelines to be fatally flawed on policy grounds because the Sentencing Commission abandoned its institutional role with respect to the drug Guidelines because it was "[s]wayed by policy reasons and pressure to conform to statutory minimums" rather than using an "empirical approach in developing the Guidelines ranges for drug-trafficking offenses."  *Id*. at 18.  Additionally, and with specific regard to the methamphetamine Guidelines, Judge Bennett determined that they are not based on any empirical data justifying their severity in comparison to other narcotics.  *Id*. at 28.  Next, he determined the methamphetamine Guidelines to be generally excessive in that they "subject all defendants to [comparatively] harsh treatment, regardless of their role in the offense."  *Id*. at 32.  Finally, Judge Bennett determined that, because the methamphetamine Guidelines ranges fail to establish "the 'heartlands' the Commission sought to establish," a variance downward is justifiable.  *Id*. at 37.

## Conclusion

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Here, in light of all the foregoing, Ms. Holguin seeks a sentence of 75 months.

Respectfully Submitted,

**LAW OFFICES OF PAUL D. PETRUZZI, P.A.**
169 E. Flagler Street, Suite 1241
Miami, FL 33131
Tel: 305-373-6773
Fax: 305-373-3832
E-mail: petruzzi-law@msn.com

By:   s/ Paul Petruzzi
      **PAUL D. PETRUZZI, ESQ.**
      Florida Bar No. 982059

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 16th day of June, 2013, all counsel of record were served with copies of this memorandum.

By:   s/ Paul Petruzzi
      **PAUL D. PETRUZZI, ESQ.**
      Attorney for Nicole Holguin

11

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 E. FLAGLER ST., STE. 1241, MIAMI, FL 33131, TELEPHONE: (305) 373-6773; FACSIMILE: (305) 373-3832